UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                   ) Case No. 17-11570-B-13
                                        )
GREGGORY RYAN KIRKPATRICK,              ) DC No. MHG-3
                                        )
              Debtor.                   )
_____)

**RULING ON OBJECTIONS TO CLAIM OF
CHRISTOPHER CALLISON(CLAIM 8-2)**

**INTRODUCTION**

The Debtor started a recreational watercraft business. He bought boats and jet skis from an acquaintance who was in that business. The Debtor signed a Loan Agreement and Deed of Trust stating and securing his promises to pay the purchase price with the boats, jet skis and his residence.

Disputes arose. Payments stopped. Foreclosure began. This bankruptcy case was filed. The seller filed a proof of claim. The Debtor objects to a portion of that claim. The court agrees with the Debtor, in part.

///
///
///
///
///
///
///
///
///

1

**PERTINENT FACTS**[1]

Christopher Callison and Perla Ivette Perez (collectively "Callison") owned and operated a recreational watercraft business. In May 2016, the boats and jet skis from Callison's business were purchased by Debtor, Greggory Ryan Kirkpatrick ("Debtor") or ("Kirkpatrick"). The parties documented the sale with a Loan Agreement and Deed of Trust.

The amount of the loan was $160,000.00, payable by Kirkpatrick in consecutive monthly installments of $1,500.00 per month beginning June 1, 2016 until paid in full. But, Kirkpatrick had to make "extra payments" of 65% of "net sales or $1,500.00, whichever is greater" for the "peak" months of July, August and September on the first of August, September and October, respectively. No definition of "net sales" was included in the Loan Agreement. There were limits on deductions from "net sales" during the peak months: wages — $2,500.00 per month; rent — $400.00 per month. The Loan Agreement also required Kirkpatrick to maintain "full coverage insurance" on a 2011 Sanger V215 watercraft during the term of the loan and pay an annual insurance premium for the Sanger watercraft.

The Loan Agreement was secured by specified watercraft and Kirkpatrick's residence at 3913 E. Pontiac Way, Fresno,

---

[1] The following are the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52 made applicable to contested matters under Fed. R. Bankr. P. 7052 and 9014(c). If any of the following facts are deemed conclusions of law, the court adopts those facts as conclusions of law. If any of the following conclusions of law are deemed findings of fact, the court adopts those conclusions as findings of fact.

California.[2] The loan agreement also contained default provisions. As long as the loan was current, no interest would be charged. If a default occurred, interest would accrue:

> Further, if the Lender declares the principal amount owing under this Agreement to be immediately due and payable, and the Borrower fails to provide full payment, interest at the rate of 10.00% per annum, calculated yearly not in advance, would be charged on the outstanding amount, commencing the day the principal amount is declared due and payable, until full payment is received by the Lender.[3]

The Loan Agreement also provided for "Costs:"

> All costs, expenses and expenditures including, without limitation, the complete legal costs incurred by enforcing this Agreement as a result of any default by the Borrower will be added to the principal then outstanding and will immediately be paid by the Borrower.

When Kirkpatrick signed the Loan Agreement, he and Callison signed the Deed of Trust.[4] The Deed of Trust included an interest provision:

> The Trustor (Kirkpatrick) agrees to pay Principal Amount with interest before and after maturity and before and after default at the rate of Ø% calculated per annum and compounding annually, ("the interest rate").[5]

---

[2] Kirkpatrick claimed at the trial that Callison never transferred legal title of the watercraft.
[3] Loan Agreement paragraph 6.
[4] The Deed of Trust and Loan Agreement were forms prepared by Callison. There was testimony at trial that each provision of both documents was discussed by Callison and Kirkpatrick before they were signed.
[5] Deed of trust paragraph 4.

The Deed of Trust also contained a provision for attorney's fees.[6]

Kirkpatrick paid Callison $1,500.00 for the month of June, $4,789.00 for the month of July, $1,703.00 for the month of August, and $1,500.00 for the month of September 2016. No other payments were made. During July and August 2016 Callison requested access to Kirkpatrick's computerized bookkeeping system to verify the "net sales" calculations. Callison thought that he was under paid based on his understanding of "net sales."[7] Both parties tried to meet to discuss Kirkpatrick's performance throughout that summer without success. Frustrated by a perceived lack of communication and missed payments, on October 19, 2016 Callison emailed a letter to Kirkpatrick demanding that Kirkpatrick "cure" all missed payments. The letter quoted provisions of the Loan Agreement permitting Callison to accelerate the obligation if the default was not "cured."

Having received either no or an unsatisfactory response, Callison recorded a Notice of Default starting non-judicial foreclosure proceedings on Kirkpatrick's residence on November 23, 2016. Callison claimed that Kirkpatrick was in default for failing to pay "net sales" for the month of June through September, and all payments due from October 1, 2016 forward.

---

[6] Deed of trust paragraph 31.
[7] There is nothing in the Loan Agreement or Deed of Trust either defining "net sales" or requiring Kirkpatrick to provide access to data to verify "net sales."

Litigation ensued.[8] Kirkpatrick filed this Chapter 13 bankruptcy case (11 U.S.C. §§ 1301-1330) on April 24, 2017.

Callison filed a timely proof of claim and amended the claim a few months later. The amended claim is the subject of this objection. Kirkpatrick's Chapter 13 Plan was confirmed.[9] Kirkpatrick filed this objection September 8, 2017.[10]

The Callison claim is fully secured. The amount of the claim, $160,875.11, is not in dispute. The claim also states an arrearage owed as of the petition date of $37,332.11. This is disputed. The components of the arrearage claim are: $10,500.00 (7 months at $1,500.00 per month); $16,490.00 ("net sales" that were not paid); $1,475.00 (property taxes Callison paid on the watercraft purchased by Kirkpatrick) and $8,867.11 (10% interest through the date of the bankruptcy filing).

## CONTENTIONS OF THE PARTIES

Kirkpatrick contends he was never notified of Callison's election to accelerate the debt, so the condition for accruing interest never occurred. Kirkpatrick also claims that the Notice of Default that Callison recorded was incorrect and no fees or interest are due because the notice included an allegation that Kirkpatrick failed to pay the required "net sales" to Callison for June 2016 and June's sales are specifically excluded under the Loan Agreement. According to Kirkpatrick, Callison miscalculated the "net sales" figures. Kirkpatrick finally

---

[8] Kirkpatrick filed a lawsuit against Callison and Callison's business A-1 Recreation, Inc. However the lawsuit was not pursued after Kirkpatrick filed bankruptcy.
[9] Document Number 171.
[10] Document Number 64.

contends that the Loan Agreement did not provide for Kirkpatrick's payment of taxes.

Callison contends that Kirkpatrick understood that he would have access to bookkeeping data in order to confirm the amount of "net sales" owed in the relevant months. He also contends that he was left with no choice but to pursue collection proceedings since Kirkpatrick allegedly failed to cooperate in meeting with him to resolve their disputes.

Neither party disputes that $10,500.00 is a proper arrearage claim representing the unpaid monthly payments that had accrued at the time the bankruptcy was filed. So the amount in dispute is $26,832.11.

## JURISDICTION

The bankruptcy court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B).

## DISCUSSION

**A. The bankruptcy claims process.**

A creditor asserts a claim in bankruptcy by filing a proof of claim. 11 U.S.C. § 501(a); Fed. R. Bankr. P. 3001, 3002.[11] A claim is "deemed allowed, unless a party in interest ... objects." § 502(a). If an interested party objects, the bankruptcy "court, after notice and a hearing, *shall* determine the amount of such claim ... and *shall* allow such claim in such amount ...." § 502(b) (emphasis added).

---

[11] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Fed. R. Bankr. P., and all "Civil Rule" references are to the Fed. R. Civ. P.

"A proof of claim executed and filed in accordance with [the Rules] shall constitute *prima facie* evidence of the validity and amount of the claim." Rule 3001(f). This evidentiary presumption is a rebuttable one. Litton Loan Servicing, LP v. Garvida (In re Garvida), 347 B.R. 697, 706 (9th Cir. B.A.P. 2006). To "defeat the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000), quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).

"'If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'" *Id.* (quoting Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. B.A.P. 1995)). The ultimate burden of persuasion, thus, remains with the claimant. *Id.*

Whether an evidentiary presumption has been rebutted is a question of fact. In re Garvida, 347 B.R. at 703.

**B.  Arrearage claim components.**

Since $10,500.00 of the arrearage claim is undisputed, the court will examine those components of Callison's arrearage claim that Kirkpatrick disputes.

///
///
///

7

1. <u>Interest.</u>

Kirkpatrick challenges the interest Callison claims raising two arguments. First, Kirkpatrick contends that the "Ø" handwritten on the Deed of Trust form that he and Callison signed proves that the parties never intended interest to accrue even if there was a default. Alternatively, Kirkpatrick contends that if interest was to accrue upon acceleration, Kirkpatrick was not informed that Callison intended to accelerate, so the condition for interest accrual never happened. Second, Kirkpatrick argues that because the Notice of Default was incorrect by including a June 2016 "extra payment," California law supports a finding that Callison waived any right to interest. Neither argument is persuasive.

First, construction of the Loan Agreement and the Deed of Trust under California law supports accrual of interest upon Kirkpatrick's default and acceleration of the obligation. "'California recognizes the objective theory of contracts.'" <u>Berman v. Bromberg</u>, 56 Cal. App. 4th 936, 948; 65 Cal Rptr. 2d 777 (1997), citing <u>ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.</u>, 17 Cal. App. 4th 1773, 1791 n.45; 22 Cal Rptr. 2d 206 (1993) ["It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation"]. Ordinarily, several contracts signed at the same time are to be construed together. Cal. Civil Code § 1642 (Deering 2018). It is a question of fact whether multiple contracts are intended to be elements of a single transaction under [Cal. Civ. Code] § 1642. <u>Pilcher v. Wheeler</u>, 2 Cal. App. 4th 352, 355; 3 Cal Rptr. 2d 533 (1992).

Ordinarily, the note and trust deed or mortgage which are executed contemporaneously to secure payment of an existing debt constitute one contract, which instruments must be construed together. W. Fruit Growers, Inc. v. Sec. Title Ins. & Guarantee Co., 20 Cal. App. 2d 150, 153-54; 66 P.2d 742 (1937). *See also* Standard Wire & Cable Co. v. Ameritrust Corp., 697 F. Supp. 368, 375 (C.D. Cal. 1988) (citations omitted). A note and Deed of Trust constitute one contract where they are part of the same transaction. Huckell v. Matranga, 99 Cal. App. 3d 471, 481; 160 Cal. Rptr. 177 (1979) (citations omitted).

It is beyond cavil that the Loan Agreement and Deed of Trust in this case were signed at the same time. There is, perhaps, ambiguity between both documents as the Deed of Trust provisions dealing with interest can be read as evidencing no interest would accrue. However, this court finds that unlikely. The specific provisions of the Loan Agreement state the conditions for accrual of interest: default and the lender electing to accelerate. In construing both documents together, the logical conclusion is the Deed of Trust provision dealing with interest was surplusage since the Loan Agreement was specific.[12]

Kirkpatrick's alternative argument that even if interest was to be charged, he never received a notice that the

---

[12] Since both contracts are to be construed according to California law, the court is also mindful of Cal. Civ. Pro. Code § 1859. "... when a general and particular provision [of an instrument] are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." The particular provision here is a provision calling for interest under the Loan Agreement versus the general provision in the Deed of Trust which contained a handwritten "Ø" on the Deed of Trust form evidencing the parties' intent to rely on the Loan Agreement for the accrual of interest.

obligation was going to be accelerated was not supported by the facts. Callison emailed a letter to Kirkpatrick on or about October 19, 2016 giving Kirkpatrick 10 days to cure an alleged default. In that letter, Callison also quoted provisions of the Loan Agreement permitting acceleration. While Callison's letter may not have included the words "I elect to accelerate," given the context of the letter, its timing, and Callison's frustration with Kirkpatrick's inability to meet with him, Callison's intent to accelerate is not startling.

Finally, Kirkpatrick argues that Callison is not entitled to interest because the Notice of Default contained inaccurate information. Kirkpatrick relies on Cal. Civ. Code § 2924.17 (Deering 2018) which requires a notice of the default to be accurate and complete and supported by competent and reliable evidence. In contrast, California law does not support a waiver of interest because of an inaccuracy in a Notice of Default. Cal. Civ. Code § 2914.12 provides that before a trustee sale a borrower can bring an action for injunctive relief to enjoin a material violation of Cal. Civ. Code § 2924.17 (and other statutes).

No trustee sale occurred in this case before the bankruptcy was filed. So, Kirkpatrick's remedy was filing an action in Superior Court and seeking a preliminary injunction. Kirkpatrick has not provided any authority supporting his position. California courts applying this provision agree on the remedy available for violation of Cal. Civ. Code § 2924.17. *See* <u>Lucioni v. Bank of Am., N.A.</u>, 3 Cal. App. 5th 150, 158; 207 Cal. Rptr. 3d 418 (2016). Under Cal. Civ. Code § 2924.12, "[P]reliminary

injunctive relief [is] [a] principal tool for compliance. . . "). <u>Artus v. Gramercy Towers Condo. Ass'n</u>, 19 Cal. App. 5th 923, 944; 228 Cal. Rptr. 3d 496 (2018), citing <u>Monterossa v. Superior Court</u>, 237 Cal. App. 4th 747, 754-55; 188 Cal. Rptr. 3d 453 (2015). Kirkpatrick's argument is unpersuasive. Applying 10% interest on the obligation from October 1, 2016 to the petition date, April 24, 2017, the total interest accrued was $8,453.19. Said sum should be included as pre-petition arrearage.

2. <u>Extra "Net Sale" Payments.</u>

Kirkpatrick argues that Callison miscalculated the "65% of net sales" payment due in months July through September 2016. Callison counters "net sales are defined of [sic] in the contract."[13] Also, Callison states that the net sales definition "is implied or assumed."[14] Neither is correct.

First, there is no definition of net sales in either the Loan Agreement or the Deed of Trust. The term "net sales" is referenced in the Loan Agreement but there is no definition in that contract.

Second, no method of calculating net sales is provided either. To be sure, the Loan Agreement included specific limits for two deductions from net sales: wages and rent. Nevertheless, the way to calculate the minuend for the subtraction equation to reach "net sales" mentioned in the Loan Agreement is non-existent. Plus, there is no dispute that Kirkpatrick did pay a "net sales" amount to Callison for the months of July and August. Kirkpatrick also gave Callison the components of his

---

[13] Transcript 46:16-20
[14] Transcript 135:4-6

calculation. Callison may not have agreed with those calculations, but the court is not persuaded that a controlling alternative was contained in the relevant agreements. Thus, Callison is not entitled to any additional monies representing 65% of net sales during the relevant period.[15]

3. <u>Property Taxes.</u>

Similarly, Callison's claim for property taxes as part of the arrearage is not supported by the agreements.

The Loan Agreement contains nothing about Kirkpatrick's liability for property taxes.

In contrast, the Deed of Trust does contain many provisions for Kirkpatrick's payment of property taxes or reimbursement to Callison for those payments. However, "the Property" referred to in those covenants is Kirkpatrick's residence — 3913 E. Pontiac Way. The obligation of a trustor to maintain property taxes on real estate which serves as collateral is commonplace. But Kirkpatrick's affirmative obligation to pay property taxes on the personal property collateral (the watercraft) is not included in the controlling agreements. Similar provisions are routinely included in a standard security agreement for personal property collateral. Not here. So, Callison is not entitled to property taxes as part of the arrearage claim.

///
///
///

---

[15] Towards the end of the evidentiary hearing on this objection, Callison seemed to be resigned to the fact that he was not going to recover any additional "net sales" from Kirkpatrick. Transcript 155:22-156:8.

4. Foreclosure Costs.

At the trial, the court admitted documents showing that Callison had paid approximately $3,752.00 in pre-petition foreclosure costs. Unlike the previous two items, the Loan Agreement and the Deed of Trust provide for Kirkpatrick's liability for foreclosure costs. But in this case, Callison has not persuaded the court they should be added for two reasons.

First, the claim itself does not include foreclosure costs as a component of the arrearage claim. While the claim can be amended to include the foreclosure costs, that was not done before the court has ruled on the claim objection. The court will not award contested parts of the claim where it is not requested.

Second, Callison has admitted that the Notice of Default which started the foreclosure was incorrect. So, it is likely a new foreclosure would have to proceed with corrected documents.[16] For those reasons, the court is not persuaded that foreclosure costs should be included in the arrearage claim at issue.

5. Attorney's Fees.

Callison claims that he has expended nearly $7,600.00 in attorney's fees protecting his security interest before the bankruptcy was filed. Both the Loan Agreement and the Deed of Trust provide for attorney's fees to Callison incurred by enforcing the agreement or protecting his security.[17] But the

---

[16] The court assumes that it is most likely a Superior Court would enjoin the foreclosure because the Notice of Default was not accurate under Cal. Civ. Code § 2924.12.

[17] See paragraph 12 of the Loan Agreement and paragraphs 31 and 32 of the Deed of Trust.

court is not persuaded Callison is entitled to attorney's fees in this case for two reasons.

First, as with the foreclosure fees, there is nothing in the claim filed by Callison preserving his right to claim attorney's fees. Callison did attach copies of the Loan Agreement and Deed of Trust to the amended proof of claim. But there is nothing in the claim itself where Callison states he is seeking attorney's fees as part of his arrearage claim, or any claim for that matter.[18]

Even if attaching the Loan Agreement and Deed of Trust to Callison's proof of claim was enough to preserve an attorney's fees claim, the court sustains the objection to the claim of attorney's fees because Callison failed to abide by discovery orders. At the first pre-trial conference in this matter, the court was made aware that Callison was asserting attorney's fees as a portion of his arrearage claim. Kirkpatrick objected to the late addition to the claim. To resolve the objection, the court continued the pre-trial conference and ordered Callison to appear at a deposition and provide all documentation supporting the attorney's fees claim. Callison did appear for the deposition and provided an invoice for the fees incurred by one of his attorneys. However, the invoice was completely redacted.[19] Callison did provide an unredacted copy of the invoice at the trial. However, that was too late for any meaningful

---

[18] It is noteworthy that Civil Rule 15 governing amendment of pleadings (Rule 7015) does not apply in contested matters absent a court order. The court did not enter an order permitting amendments of pleadings in this matter or specifically authorizing any amendment.

[19] Later, at the trial, a second counsel's fees was added as part of the exhibits Callison proposed to admit. The court sustained Kirkpatrick's objection to the admission of the invoice for the second attorney's services.

consideration and response by Kirkpatrick or his counsel. The court admitted the unredacted copy of the invoice, but because of the discovery issues, the court finds the documents unpersuasive to support adding attorney's fees as a portion of Callison's arrearage claim.[20] Thus, no attorney's fees shall be included in Callison's arrearage claim.

6.  Insurance Coverage for Sanger Boat.

Finally, Callison asserts that he paid $631.00 to insure the Sanger boat which Kirkpatrick purchased as part of the transaction.[21] The Loan Agreement provides that full coverage insurance is required on the Sanger boat and that Kirkpatrick was to pay the insurance bill within 15 days of receipt of the bill. As mentioned, the Loan Agreement was attached to Callison's claim. The evidence of Callison's payment of this insurance was uncontroverted and not disputed by Kirkpatrick.[22]

Since insurance was paid prior to the petition and Kirkpatrick was liable for that insurance payment under the terms of the Loan Agreement, the $631.00 shall be included as a portion of Callison's arrearage claim.[23]

---

[20] See also Civil Rule 37(b)(2)(A)(ii) and (c)(Rule 7037).
[21] The evidence establishes that the Sanger boat is subject to a lien in favor of Bank of the West. The court does not make a finding that the security interest is valid because it is unnecessary for this claim objection. But, the existence of the lien (whether valid or not) explains the reason the insurance re-imbursement procedure was included in the agreements.
[22] See Callison Ex. D.
[23] Callison also asserted that he was entitled to approximately $180.00 for renewal of registrations for the watercraft. The evidence was that the watercraft registrations are paid bi-annually. The evidence showed that Callison made the payments on December 31, 2015. Callison (Ex. F). Thus, when Kirkpatrick agreed to purchase the watercraft the registration cost was "built in" to the consideration Kirkpatrick agreed to pay for the watercraft.

15

## CONCLUSION

For the foregoing reasons, Callison's claim (8-2) will be allowed as filed except for the arrearage portion. The arrearage portion shall be allowed in the amount of $18,584.19 consisting of the following components: $10,500.00 (7 months of unpaid payments); $8,453.19 interest through April 24, 2017 plus $631.00 (insurance). A separate order shall issue.

Dated: Nov 29, 2018

By the Court

René Lastreto II, Judge
United States Bankruptcy Court

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked   X   , via the U.S. mail.

Greggory Ryan Kirkpatrick
3913 East Pontiac Way
Fresno CA 93726

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721

Christopher Scott Callison
2695 Palo Alto Ave
Clovis CA 93611

Martin H. Gamulin
191 W Shaw Ave #201
Fresno CA 93704